1

2

3

4

5

6                      UNITED STATES DISTRICT COURT

7                            DISTRICT OF NEVADA

8                                  * * * * *

9   ZENA WILLIAMS, an individual; and as the   )
    mother and guardian for CORNELIUS          )
10  PERRY a minor; and as guardian of TERRY    )      03:05-CV-0175-LRH (RAM)
    ROLLINS, a minor,                          )
11                                             )
                   Plaintiffs,                 )              ORDER
12                                             )
    vs.                                        )
13                                             )
    GARY UNDERHILL in his official and         )
14  individual capacity; MIKE MIERAS in his    )
    official and individual capacity; ED       )
15  SHEPPARD in his official and individual    )
    capacity; the WASHOE COUNTY SCHOOL         )
16  DISTRICT; and DOES 1 through 10,           )
                                               )
17                 Defendants.                 )
                                               )
18  _____ )

19          Presently before this court is Defendants' Motion to Dismiss (#19)[1].  Plaintiffs have

20  submitted an opposition (#22), to which Defendants subsequently replied (#24).

21                     **FACTUAL AND PROCEDURAL BACKGROUND**

22          The present case arises out of an allegedly unlawful detention and arrest at Hug High

23  School ("HHS"), a school within the Washoe County School District.  The plaintiffs, Zena

24  Williams, Cornelius Perry ("Cornelius") and Terry Rollins ("Terry") (collectively "Plaintiffs"),

25  represent one in a number of families who have resorted to legal action against Defendants Gary

26  Underhill ("Underhill"), a school police officer, Mike Mieras ("Mieras"), the Washoe County

27  School District Chief of Police, Ed Sheppard ("Sheppard"), the Dean of Student Discipline at

28

    _____

          [1] All references to (#XX) refer to the court's docket.

1    HHS, and the Washoe County School District ("WCSD") (collectively "Defendants"), to remedy
2    alleged racial discrimination on the HHS campus.

3        Cornelius and Terry are both students of HHS.  Their claims arise out of two encounters
4    with Underhill.  The first occurred on February 18, 2005.  On that date Cornelius and Terry were
5    waiting for Zena Williams to pick them up after school.  They had chosen to wait in the school
6    gym because of inclement weather.  Nearly twenty other students are alleged to have been inside
7    the gym at that time.

8        According to Plaintiffs, Underhill approached Cornelius and Terry and told them they
9    were trespassing and would need to leave the school.  When Cornelius and Terry protested that
10   they were simply waiting for their ride and did not want to be in the rain, Underhill handcuffed
11   both boys and placed them under arrest.  Zena Williams arrived at that time and confronted
12   Underhill.  Ms. Williams told Underhill the boys were students at the school and demanded their
13   release.  Underhill did not release the boys.

14       Instead of taking the boys to the school police office or the main office Underhill took
15   Cornelius and Terry to a separate building, named the G building.  Underhill kept the boys in a
16   room in the G building for an hour, during which time it is alleged he threatened them and struck
17   Terry in the head three times.  Sheppard is alleged to have been present and is accused of failing
18   to prevent the threats or violence.

19       After the hour, Underhill released the boys to Ms. Williams with citations for trespassing.
20   During the release it is alleged Underhill called Cornelius a sexual predator.

21       The second incident occurred on March 16, 2005.  On that day both Cornelius and Terry
22   were walking on campus with the track team, of which they were members, after track practice
23   had ended.  Underhill allegedly detained Cornelius and Terry as well as the roughly 10 other
24   members of the track team.  Underhill told all the students that they were trespassing and took
25   them all to the office.  Cornelius and Terry received trespassing citations from that incident.
26   ///
27   ///
28   ///

2

## LEGAL STANDARD FOR MOTION TO DISMISS

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

## DISCUSSION

Plaintiffs filed the present complaint alleging eight claims for relief: violation of their Fourth and Fourteenth Amendment rights through 42 U.S.C. § 1983; violation of Title VI, 42 U.S.C. § 2000d; battery; false imprisonment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligent supervision and training; and violation of administrative regulations. Defendants have sought to dismiss all claims except for those brought pursuant to Title VI.[2]

///

---

[2] Defendants have sought to dismiss the Title VI claim as it relates to the individual defendants and in so far as it seeks punitive damages. Plaintiffs have noted in their opposition that the claim is not against the individual defendants and does not seek punitive damages. Thus, Defendants' arguments on this point are moot and will not be discussed.

1      **A.      Federal Claims[3]**

2      *1.      42 U.S.C. § 1983*

3          Plaintiffs' first claim for relief, brought pursuant to 42 U.S.C. § 1983, alleges

4  deprivations of their civil rights in violation of the Fourth and Fourteenth Amendments to the

5  United States Constitution.

6      *a.      Plaintiffs' Equal Protection Claim is Subsumed by Title VI*

7          In seeking dismissal of the first claim for relief, Defendants note that Plaintiffs' second

8  claim for relief, based upon the same set of facts alleged for the constitutional claims, alleges that

9  Cornelius and Terry were discriminated against on account of their race in violation of Title VI

10  of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Since the first two claims for relief are

11  based upon the same set of facts, Defendants argue that Plaintiffs' section 1983 claim is

12  subsumed by the Title VI claim and must be dismissed.

13          42 U.S.C. § 1983 supplies a cause of action to a plaintiff when a person acting under the

14  color of law deprives that plaintiff of any "rights, privileges, or immunities secured by the

15  Constitution and laws [of the United States.]"  However, "[w]hen the remedial devices provided

16  in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional

17  intent to preclude the remedy of suits under § 1983."  *Middlesex County Sewerage Auth. v. Nat'l*

18  *Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981).  In determining whether an act subsumes a section

19  1983 action, the court must determine whether Congress intended that act to supplant any remedy

20  that would otherwise be available under section 1983.  *Id*. at 21.  Such Congressional intent may

21  be found directly in the statute creating the right or inferred when the statutory scheme is

22  incompatible with individual enforcement under section 1983.  *City of Rancho Palos Verdes,*

23  *Cal. v. Abrams*, 125 S.Ct. 1453, 1458 (2005).  The defendant bears the burden of demonstrating

24

25  ─────────────────

26          [3]  The federal claims in this matter are brought on behalf of Cornelius Perry and Terry
Rollins.  Zena Williams has only alleged claims of Intentional Infliction of Emotional Distress
and Negligent Infliction of Emotional Distress as direct actions on her behalf.  Thus, the term

27  Plaintiffs refers in this section to Cornelius, Terry and Zena Williams as the juveniles' guardian

28  only.

1    that Congress has expressly withdrawn the section 1983 remedy.  *Golden State Transit Corp. v*
2    *City of Los Angeles*, 493 U.S. 103, 107 (1989).

3         The Ninth Circuit has not decided the specific issue of whether section 1983 is subsumed
4    by Title VI.  However, the Ninth Circuit has recognized the Supreme Court's *Sea Clammers*
5    doctrine when construing other federal statutes and found that those statutes precluded a section
6    1983 remedy.  *See, e.g.*, *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999); *Dep't of Educ.,*
7    *State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir. 1984).  In addition, the District of
8    Nevada has recognized that a section 1983 action is barred in the context of Title IX of the
9    Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*  *Henkle v. Gregory,* 150
10   F.Supp.2d 1067 (D. Nev. 2001).

11        In the present case, this court is called upon to decide whether Title VI serves to bar an
12   action brought pursuant to section 1983.  While Title VI does not explicitly purport to limit
13   section 1983 relief, 42 U.S.C. § 2000d, congressional intent to foreclose such a remedy can still
14   be inferred from the creation of a comprehensive statutory scheme.  *Sea Clammers*, 453 U.S. at
15   20.   Therefore, the first question this court must decide is whether Title VI is sufficiently
16   comprehensive to demonstrate the congressional intent to foreclose a section 1983 remedy.  If
17   Title VI is sufficiently comprehensive, the court must determine whether Plaintiffs' section 1983
18   claims seek to remedy conduct that is within the scope of Title VI.  Only section 1983 claims that
19   are within the scope of a comprehensive statutory scheme are subsumed by that scheme.  *See*
20   *Smith v. Robinson*, 468 U.S. 992, 1003 n.7 (1984) *superseded by* Education of the Handicapped
21   Act*, § 615(e)(4), as amended, 20 U.S.C. § 1415(e)(4).

22        The courts are split as to whether Title VI subsumes section 1983.  The Seventh Circuit[4]
23   and the Western District of New York[5] have found that Title VI is sufficiently comprehensive to
24   preclude a plaintiff from bypassing its enforcement mechanisms through a section 1983 action.
25
26   _____

27        [4]*Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999).

28        [5]*Bayon v. State Univ. of New York at Buffalo*, 2001 WL 135817, *3 (W.D.N.Y. 2001).

1  Conversely, The Third Circuit[6] and the First Circuit[7] have found that Title VI is not sufficiently

2  comprehensive.  After examining the relevant case law and the statutory scheme of Title VI, this

3  court finds that Title VI is sufficiently comprehensive to evince congressional intent to foreclose

4  a section 1983 remedy.

5         As mentioned previously, this district has found that Title IX is sufficiently

6  comprehensive to foreclose a section 1983 remedy.  *Henkle*, 150 F.Supp.2d at 1074.  Title IX

7  was patterned after Title VI and is enforced and interpreted in the same manner as Title VI.

8  *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (citations omitted); *Alexander v. Sandoval*, 532

9  U.S. 275, 280 (2001) (citations omitted).  As with Title IX, the court finds that Title VI contains

10  a comprehensive administrative enforcement scheme.[8]  *See* 34 C.F.R. § 100.1 *et seq.*; *Henkle*,

11  150 F.Supp.2d at 1073.

12         Title VI's administrative scheme allows persons who believe they were discriminated

13  against to file a written complaint with the responsible department official.  34 C.F.R. § 100.7(b).

14  A complaint that indicates noncompliance with Title VI triggers a prompt investigation.  34

15  C.F.R. § 100.7(c).  If the investigation reveals a failure to comply with Title VI, the department

16  will take steps necessary to ensure compliance.  34 C.F.R. §§ 100.7, 100.8, 100.9.  Although

17  these regulations do not provide a monetary remedy for a complainant who was discriminated

18  against, the regulations do provide a process designed to effectuate compliance with Title VI.  A

19  federally funded entity that does not comply with Title VI may ultimately lose its federal

20  financial assistance.  34 C.F.R. § 100.8.  In addition to the administrative remedies, Title VI

21  contains an implied private cause of action through which individuals can obtain both injunctive

22  relief and damages.  *Sandoval*, 532 U.S. at 279.

23  ────────────────

24       [6]*Powell v. Ridge*, 189 F.3d 387, 402 (3rd Cir. 1999) *overruled on other grounds by Alexander v.*

25  *Sandoval*, 532 U.S. 275 (2001).

26       [7]*Cousins v. Sec'y of the United States Dep't of Transp.*, 857 F.2d 37, 44-45 (1st Cir. 1988)

27  (indicating that Title VI remedies, sought pursuant to section 505 of the Rehabilitation Act of 1973, are
     not "so comprehensive as to indicate a congressional intent to foreclose alternate avenues of relief").

28       [8]In fact, Title IX relies on many of the provisions applicable to Title VI.  34 C.F.R. § 106.71.

6

1    An additional consideration in determining whether a particular statutory scheme should

2    bar a section 1983 action, apart from administrative and private remedies, is whether that scheme

3    provides a more restrictive private remedy for statutory violations than would otherwise be

4    available pursuant to section 1983. *Abrams*, 125 S.Ct. at 1458. In the context of Title VI, the

5    Supreme Court has recognized that the available remedies should sometimes be limited to

6    declaratory and injunctive relief. *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 595-97

7    (1983). Furthermore, a Title VI plaintiff can only seek recovery from the recipient of the federal

8    funding. *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-70 (11th Cir. 2003). In other words,

9    individuals may not be held liable under Title VI. *Id.*

10   Given the fact that Title VI offers an administrative enforcement scheme, a private right

11   of action and damages that are more restrictive than those available through section 1983, the

12   court finds that a remedy under section 1983 for conduct within the scope of Title VI would be

13   incompatible with Title VI. *See Abrams*, 125 S.Ct. at 1458. Title VI provides the exclusive

14   mechanism for recovery to individuals who were discriminated against on the basis of race by

15   any program or activity receiving federal financial assistance. *See* 42 U.S.C. § 2000d.

16   Although the court has concluded that Title VI subsumes a section 1983 remedy, the

17   inquiry does not end here. The next question seeks to determine which section 1983 remedies

18   are subsumed by Title VI. In *Henkle*, the court stated that the plaintiff could not bring a

19   constitutional equal protection claim based upon the same facts as a Title IX claim. 150

20   F.Supp.2d at 1074. Relying on *Smith*, the *Henkle* court found that "it would be inconsistent to

21   allow a plaintiff to circumvent [the Title IX] scheme by pursuing an equal protection claim under

22   § 1983 based upon the same set of facts." *Id*. This inconsistency would result from allowing a

23   plaintiff to bypass the scheme Congress created to remedy such violations. However, this

24   reasoning is inapplicable where a plaintiff brings a cause of action pursuant to section 1983 to

25   redress conduct that is outside the scope of the statutory scheme. *See Smith*, 468 U.S. at 1003 n.7

26   ("Claims not covered by the EHA should still be cognizable under § 1983, with fees available for

27   such actions.").

28   In the case at bar, Plaintiffs' first cause of action alleges violations of the Fourth

7

1   Amendment and the Equal Protection Clause of the Fourteenth Amendment.  In order to

2   determine whether these claims for relief are subsumed by Title VI, the court must determine

3   whether Title VI proscribes the alleged conduct for which Plaintiffs are seeking relief.  Title VI

4   provides that  "[n]o person in the United States shall, on the ground of race, color, or national

5   origin, be excluded from participation in, be denied the benefits of, or be subjected to

6   discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. §

7   2000d.

8          Plaintiffs' Equal Protection claim alleges that they were denied the same treatment as

9   other students on account of their race.  The court finds that such allegations fall squarely within

10  the conduct that Title VI was designed to remedy.  Title VI essentially proscribes conduct that

11  would violate the Equal Protection Clause of the Fourteenth Amendment.  *Regents of Univ. of*

12  *California v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those

13  racial classifications that would violate the Equal Protection Clause of the Fifth Amendment.").

14  However, as previously discussed, the remedies available under Title VI are different than those

15  that would otherwise be available pursuant to section 1983.  Because Congress enacted a

16  statutory scheme sufficiently comprehensive to remedy racial discrimination committed by an

17  entity receiving federal financial assistance, Plaintiffs cannot pursue a section 1983 remedy for

18  the same conduct.

19         The court, however, reaches a different result with respect to Cornelius and Terry's

20  Fourth Amendment claims.  Cornelius and Terry allege that their detention and arrest was made

21  without probable cause or reasonable suspicion and Terry's arrest was effectuated through the

22  use of excessive force.   The court finds that these claims are not subsumed by Title VI as Title

23  VI was not intended to remedy instances of unreasonable seizures in violation of the Fourth

24  Amendment.  Although Plaintiffs allege a discriminatory motive behind their arrests, the causes

25  of action assert a claim for unreasonable seizure rather than discrimination.

26         *b.     Qualified Immunity*

27         After the foregoing discussion on whether claims brought under section 1983 are

28  subsumed by Title VI, the court is left with the alleged Fourth Amendment violations against

8

1   Defendants.  Defendants note that the claims are brought in two distinct manners.  One set of

2   claims is against Defendant Underhill for his direct actions.  The second is against Defendants

3   Sheppard and Mieras under a supervisor liability theory.  Defendants then claim that all

4   defendants are entitled to qualified immunity.

5          State officials are provided with a qualified immunity against section 1983 claims

6   "insofar as their conduct does not violate clearly established statutory or constitutional rights of

7   which a reasonable person would have known." *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th

8   Cir. 2005); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This immunity is granted broadly

9   and "provides ample protection to all but the plainly incompetent or those who knowingly violate

10  the law." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*,

11  475 U.S. 335, 341 (1986)).

12         In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

13  evaluation of qualified immunity, which has also been adopted by the Ninth Circuit.  *See, e.g.*,

14  *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of*

15  *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).  The first step taken by the court is to make a

16  constitutional inquiry by determining the following issue: "based upon the facts taken in the light

17  most favorable to the party asserting the inquiry, did the officer's conduct violate a constitutional

18  right?" *Johnson*, 340 F.3d at 791 (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th

19  Cir. 2001)); *Saucier*, 533 U.S. at 201.  If the court finds that the officer's conduct violated a

20  constitutional right, the second step of the *Saucier* analysis is that the court determine whether

21  the officer is entitled to qualified immunity.  *Johnson*, 340 F.3d at 791-92.   As part of its

22  qualified immunity analysis, the court should consider whether the law governing the conduct

23  was clearly established when the conduct occurred.  *Robinson v. Solano County*, 278 F.3d 1007,

24  1012 (9th Cir. 2001) (en banc).  If the right violated was clearly established, the court should also

25  decide "whether the officer could nevertheless have reasonably but mistakenly believed that his

26  or her conduct did not violate a clearly established constitutional right." *Id*. at 201-02; *Saucier*,

27  533 U.S. at 201-05.

28         The first step in the two-step process is intended to "set forth principles which will

9

1  become the basis for a holding that a right is clearly established." *Saucier*, 533 U.S. at 201.  If a

2  court were to skip this initial step, "[t]he law might be deprived of this explanation," *Id.*, thereby

3  inhibiting the development of Fourth Amendment law.  *See Robinson*, 278 F.3d at 1012.  It is

4  therefore necessary to first consider the constitutional inquiry.  Only if the court determines that

5  Plaintiff's Fourth Amendment rights were violated will the court address the immunity issue.

6  *Johnson*, 340 F.3d at 794-95; *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

7        The court notes that at this stage in the proceedings, the allegations contained in the

8  complaint are viewed in the light most favorable to the Plaintiffs.  Viewing the facts in this light,

9  Plaintiffs have properly alleged violations of clearly established constitutional rights.  *See Kaupp*

10 *v. Texas*, 538 U.S. 626, 630 (2003) (requiring probable cause to effectuate a seizure); *Graham v.*

11 *Connor*, 490 U.S. 386, 396-99 (1989) (discussing the Fourth Amendment right to be free from

12 *unreasonable* seizures).  Whether or not the Plaintiffs' arrests lacked probable cause or were

13 effectuated by using excessive force cannot be determined at this time.  Accordingly, the court

14 cannot say at this time that Defendant Underhill is entitled to qualified immunity.

15       Defendants Sheppard and Mieras as supervisory officials "can be held liable under

16 section 1983 'only if they play an affirmative part in the alleged deprivation of constitutional

17 rights.'" *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) (quoting *Rise v.*

18 *Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995)).  "Supervisory liability is imposed against a

19 supervisory official in his individual capacity for his own culpable action or inaction in the

20 training, supervision, or control of his subordinates; for his acquiescence in the constitutional

21 deprivations of which the complaint is made; or for conduct that showed a reckless or callous

22 indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.

23 1991) (internal quotations and citations omitted).  In their complaint, Plaintiffs allege that their

24 rights were violated because Defendants implemented discriminatory procedures, policies, and

25 customs.  Therefore, at this time, the court cannot say that Plaintiffs will be unable to offer facts

26 to prove that Sheppard and Mieras were responsible for the alleged Fourth Amendment

27 violations.  Similarly, the court cannot determine whether Sheppard and Mieras are entitled to

28 qualified immunity at this time as it is not clear what role, if any, these defendants played in the

1    alleged violations.

2         Also, the court is cognizant of Defendants' arguments made pursuant to *Heck v.*

3    *Humphrey*, 512 U.S. 477, 486-87 (1994).  Specifically, Defendants argue that a favorable

4    judgment on Plaintiffs' section 1983 claim would imply that any juvenile proceedings upon

5    Cornelius and Terry's trespassing citations are invalid.  Therefore, Defendants argue that *Heck*'s

6    protections against such collateral attacks serve as a bar to one or more of Plaintiffs' section 1983

7    claims.  At this stage of the proceedings, the facts relative to a *Heck* argument are not clearly

8    before the court.  For this reason, the court will reserve ruling on this issue at this time.

9         **B.  State Law Claims**

10        In addition to the federal claims discussed above, Plaintiffs also bring state law claims

11   alleging battery, false imprisonment, intentional infliction of emotional distress, negligent

12   infliction of emotional distress, negligent supervision and training, and violation of

13   administrative regulations.

14        Defendants argue they are entitled to immunity on these claims pursuant to Nevada

15   Revised Statute section 41.032.  Specifically, Defendants argue the actions of all Defendants

16   were discretionary acts that cannot form the basis for a lawsuit in Nevada.

17        Section 41.032(2) of the Nevada Revised Statutes provides as follows:

18        no action may be brought under NRS 41.031 or against an immune contractor or
          an officer or employee of the State or any of its agencies or political subdivisions
19        which is: [b]ased upon the exercise or performance or the failure to exercise or
          perform a discretionary function or duty on the part of the State or any of its
20        agencies or political subdivisions or of any officer, employee or immune
          contractor or any of these, whether or not the discretion involved is abused.
21

22   Nev. Rev. Stat. § 41.032.  "Discretionary acts are those which require the exercise of personal

23   deliberation, decision and judgment."  *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354

24   (Nev. 1987) (citing *Parker v. Mineral County*, 729 P.2d 491, 493 (Nev. 1986)).  An action can be

25   brought, however, if the acts in question are merely "'ministerial,' amounting only to obedience

26   to orders, or the performance of a duty in which the officer is left no choice of his own."  *Maturi*

27   *v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 934 (Nev. 1994).

28   ///

11

1        *1. State Claims Arising Directly From Arrest*

2        The Nevada Supreme Court has specifically concluded that a police officer's decision to

3   make a traffic stop and arrest a person for failing to sign a traffic ticket are discretionary acts

4   because they require the officer to use his judgment. *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev.

5   1998). In the present case, Underhill used his discretion to determine when to detain Plaintiffs

6   and how to treat them once detained. *See Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d

7   932, 933 (Nev. 1994) (holding officer's decision to handcuff suspect behind back instead of in

8   front despite complaints of medical problems was discretionary). Accordingly, all state law

9   claims arising directly out of Plaintiffs' detention by Underhill are dismissed under Nevada's

10  state immunity law. These claims are battery, false imprisonment, intentional infliction of

11  emotional distress and negligent infliction of emotional distress.

12       *2. Negligent Supervision and Training*

13       This court has held that the supervision and training of employees is not a discretionary

14  act subject to immunity under Nevada Revised Statute 41.032. *Herrera v. Las Vegas Metro.*

15  *Police Dep't.*, 298 F.Supp.2d 1043, 1054-55 (D. Nev. 2004). In addition, viewing the complaint

16  in the light most favorable to Plaintiffs, the court cannot say that a claim for negligent

17  supervision and training has not been stated. Plaintiffs have alleged that previous incidents

18  occurred which demonstrated to Defendants that they were negligent in their supervision or

19  training of Underwood. As such, Plaintiffs have pled the minimal requirements of the tort. *See*

20  *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996) (noting that an "employer has a duty to use

21  reasonable care in the training, supervision, and retention of his or her employees to make sure

22  that the employees are fit for their position").

23       *3. Violation of Administrative Regulations*

24       Plaintiffs bring this claim pursuant to WCSD Administrative Regulation 5144.21. The

25  WCSD Administrative Regulations do not provide an explicit private right of action for

26  violations of their requirements. However, in certain circumstances courts will imply a private

27  right of action into a statutory scheme. *See Cort v. Ash*, 422 U.S. 66, 78 (1975) (noting the four

28  factors to consider when determining whether a private right of action should be implied are (1)

12

1   whether the plaintiff was one of the class for whose special benefit the statute was enacted; (2)

2   whether there was an indication of legislative intent to create or deny such a remedy; (3) whether

3   the remedy was consistent with the underlying purposes of the legislative theme; and (4) whether

4   the cause of action was one traditionally relegated to state law so that it would be inappropriate to

5   infer a cause of action based solely on federal law)[9]; *see also Sports Form, Inc. v. LeRoy's Horse*

6   *& Sports Place*, 823 P.2d 901, 902 (Nev. 1992) (noting the factors in *Cort* are helpful for

7   determining private right of actions in state statutes as well).

8          In this matter Plaintiffs are part of the class for which the regulations were created.

9   However, it is clear that the regulations do not contemplate a private cause of action for damages

10  arising out of a failure to follow the regulations and that such a remedy would be inconsistent

11  with the goal of the regulations; namely encouraging the school district and its students to work

12  together and within the system to resolve grievance disputes based on perceived discrimination.[10]

13  In fact, the regulations provide an alternative avenue to the court system, without foreclosing that

14  option, by which an aggrieved may attempt to resolve disputes.  In essence, the school district

15  gives individuals the ability to resolve their problems internally if they wish, without mandating

16  that they give up their legal rights.  When weighed in this light, the relevant factors discussed in

17  *Cort* do not imply a private right of action in the WCSD Administrative Regulations that would

18

19          [9]  Some courts consider the *Cort* four factor test to be implicitly overruled and reduced to

20  a single factor test seeking to determine the congressional intent behind a statute.  *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 308 (6th Cir. 2000).  However, the Ninth Circuit -

21  although recognizing the potential conflict between *Cort* and subsequent Supreme Court cases -

22  and the Nevada Supreme Court still consider the full four factor test relevant to determining if a private right of action exists.  *See First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121-22

23  (9th Cir. 2000).  Thus, the four factor test is the appropriate test for determining whether a

24  private right of action exists in an action governed by Nevada state law.

25          [10]  The regulation provides a brief note on its purpose and scope, stating: "The best

26  solutions are those that involve input from those closest to the concern. . . . At any time, a student may choose to initiate the following grievance procedure along with having the legal right to file

27  a grievance with . . . a court of competent jurisdiction. . . ."  WCSD Reg. 5144.21 at 3.  Thus, the grievance procedure is designed as an alternative to litigation in the courts with the purpose of

28  using those closest to the situation to work out an amicable solution outside of the court system.

13

1    allow an aggrieved student to sue the WCSD based on a violation of those regulations.

2    Accordingly, Plaintiffs' claim for relief must be dismissed.

3           It is therefore ORDERED that the Defendants' Motion to Dismiss (#19) is GRANTED in

4    part and DENIED in part as discussed above.

5           DATED this 16th day of February, 2006.

6

7

8    _____

9    LARRY R. HICKS
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            14