UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| ZENA WILLIAMS, an individual; et al., | ) ) | |
| Plaintiffs, | ) ) | 03:05-CV-00175-LRH-RJJ |
| v. | ) ) | ORDER |
| GARY UNDERHILL, in his official capacity; et al., | ) ) ) | |
| Defendants. | ) ) | |

Presently before the court is a Motion for Summary Judgment (# 60[1]) filed by defendants, Washoe County School District ("WCSD"), Mike Mieras ("Mieras"), Gary Underhill ("Underhill") and Edward Shepard ("Shepard") (collectively, "Defendants"). Plaintiffs, Zena Williams, Cornelius Perry and Terry Rollins (collectively, "Plaintiffs") have filed an opposition (# 78), and Defendants replied (# 79).

**I. Factual Background**

This action arises out of alleged racial discrimination at Hug High School ("HHS"), a school within the Washoe County School District. Zena Williams ("Williams") is African American, the mother of Cornelius Perry ("Perry"), and the guardian of Terry Rollins ("Rollins"). (Exhibits (## 61-75), Dep. of Zena Williams, Ex. 1 at 11:8-11, 15:25-16:25, 54:13-16.) Perry is

---

[1]Refers to the court's docket number.

African American and formerly attended HHS. (Exhibits (## 61-75), Dep. of Cornelius Perry, Ex. 5 at 11:9-10; Dep. of Zena Williams, Ex. 1 at 165:19-21.) Rollins is also African American and attended HHS in the spring of 2005. (Exhibits (## 61-75), Dep. of Terry Rollins, Ex. 3 at 6:20-22.)

During the 2004-2005 school year, HHS had problems with grafitti, vandalism, drugs and gang activity. (Exhibits (## 61-75), Dep. of Tom Kallay, Ex. 9 at 37:20-38:23; Dep. of Gary Underhill, Ex. 11 at 79:8-20, 178:2-6.) To address safety concerns, HHS adopted a "fifteen-minute rule." (Exhibits (## 61-75), Dep. of Tom Kallay, Ex. 9 at 37:20-39:1.) Pursuant to the rule, students had fifteen minutes to get to their after-school activities or to vacate the campus. *Id*. at 39:1-6. Students who violated the rule could be considered trespassing. *Id*. at 7-17. Both Perry and Rollins knew about the fifteen-minute rule. (Exhibits (## 61-75), Dep. of Cornelius Perry, Ex. 5 at 57:9-15; Dep. of Terry Rollins, Ex. 3 at 52:7-12.)

February 18, 2005, was a cold and rainy day. (Exhibits (## 61-75), Dep. of Edward Shepard, Ex. 6 at 99:7-8.) On that date, Shepard, Dean of Discipline, encountered Perry and Rollins in the school gymnasium. *Id.* at 99:3-20. Shepard told the students they needed to leave because school was over for the day. *Id*. at 99:21-22. Perry and Rollins first lied to Shepard and told him they were on the baseball team. *Id*. at 100:4-6. The students then told Shepard it was "too cold" outside. *Id*. at 100:11-12. Shepard again told them to leave and the students started arguing and using profanities. *Id*. at 100:21-101:5. As a result, Shepard called School Police Officer Underhill to come to the gymnasium. *Id*. at 101:2-3. According to Plaintiffs, other students were also in the gymnasium and were not told to leave. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Decl. of Terry Rollins, Ex. 4 ¶ 4.)

Officer Underhill arrived at the gym and told Perry and Rollins they needed to leave. (Exhibits (## 61-75), Dep. of Cornelius Perry, Ex. 5 at 60:10-16, 61:2-5.) Underhill then began to write trespass citations to Perry and Rollins. *Id*. at 61:20-23. Perry and Rollins both stated they did not know their address. *Id*. at 61:24-62:3. Underhill told the students he was not convinced that a

2

sixteen-year-old student was completely ignorant of his address. *Id*. at 62:20-25.

Underhill informed the students he would arrest them if they could not give him an address. (Exhibits (## 61-75), Dep. of Gary Underhill, Ex. 11 at 200:5-9.)  Neither student responded. *Id*. at 200:9. At this point, Underhill arrested Perry and Rollins. *Id*. at 200:10-16.  The students cooperated with the arrest and were escorted to the school police office. *Id*. at 200:17-201:5.

Williams showed up as officers were walking the students to the school police office. *Id*. at 202:24-203:3.  She was upset, yelled at Underhill and demanded that the handcuffs be removed. *Id*. at 203:16-18.

While in the school police office, the students remembered their addresses. *Id*. at 202:15-17.  As a result, Underhill elected to give them both a citation. *Id*. at 202:17-19.

Rollins alleges Underhill called Rollins and Perry niggers while arresting the students. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Decl. of Terry Rollins, Ex. 4 ¶ 8.)  Rollins further asserts Underhill called both students ignorant once they were in the police office. *Id*. ¶ 9.  Rollins further alleges Underhill hit him in the head causing his head to hit against the wall. *Id.*  Underhill denies using the racial epithet and hitting Rollins. (Exhibits (## 61-75), Dep. of Gary Underhill, Ex. 11 at 201:23-202:11, 204:24-205:8.)

In March, 2005, a month after the trespass citations were issued, School Police Officer Fernando Calderon ("Calderon") was notified that trash, papers, and debris had been scattered throughout the gym. (Exhibits (## 61-75), Decl. of Fernando Calderon, Ex. 15 ¶ 9.)  Calderon had observed Williams and Perry at HHS until about 6:00 p.m. on that day. *Id*.  The next day, Calderon called the two students from their classrooms to issue them citations for trespassing. *Id*. Rollins and Perry were also accused of messing up the gym. (Exhibits (## 61-75), Dep. of Terry Rollins, Ex 3 at 110:21-24.)  Williams showed up and told Rollins not to sign the paper until he speaks with a lawyer. *Id*. at 117:7-10.  Williams then took the boys home. *Id*. at 124:23-25.

On or about April 21, 2005, Calderon encountered Perry at HHS. (Exhibits (## 61-75),

3

Decl. of Fernando Calderon, Ex. 15 ¶ 11.) Perry indicated he was waiting for a ride. *Id*. Perry had an active trespass warning[2] and Calderon issued Perry a trespass citation. *Id*.

The next incident occurred on or about April 29, 2005. On that date, Perry and a group of his friends heard that some Mexican students wanted to fight them. (Exhibits (## 61-75), Dep. of Cornelius Perry, Ex. 5 at 101:22-24.) At one point, the Mexican students started walking towards Perry and his friends and telling Perry's group to fight them. *Id*. at 103:1-21. At this point, school police officers showed up. *Id*. at 012:25-104:1. Perry was arrested as a result of this incident. *Id*. at 110:1-5.

Williams showed up and yelled at the officers. (Exhibits (## 61-75), Decl. of Fernando Calderon, Ex. 15 ¶ 12.) She indicated she would follow them when they transported Perry to the juvenile facility. *Id*. Williams picked Perry up from the facility and took him home. (Exhibits (## 61-75), Dep. of Zena Williams, Ex. 1 at 185:7-13, 187:25-188:6.)

Following a motion to dismiss, Plaintiffs have remaining causes of action for alleged violations of the Fourth Amendment, Title VI, and a state law claim for negligent supervision and training.

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

---

[2] Plaintiffs argue there was not an active trespass warning against Perry. Nevertheless, Plaintiffs have not provided any evidence to refute the evidence provided by Defendants.

1    The moving party bears the burden of informing the court of the basis for its motion, along
2 with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,
3 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party
4 must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could
5 find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
6 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). For
7 those issues where the moving party will not have the burden of proof at trial, the movant must
8 point out to the court "that there is an absence of evidence to support the nonmoving party's case."
9 *Celotex Corp.,* 477 U.S. at 325.
10   In order to successfully rebut a motion for summary judgment, the non-moving party must
11 point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.
12 Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
13 affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
14 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
15 judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
16 regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
17 return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a
18 scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine
19 dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at
20 252.
21 **III. Discussion**
22   Defendants seek summary judgment on all remaining causes of action. The court will
23 address each cause of action and the parties' arguments below.
24   **A. 42 U.S.C. § 1983**
25   Defendants argue the detentions of Perry and Rollins were supported by reasonable
26

5

suspicion or probable cause. Defendants further argue that any force used on Rollins is *de minimus* and fails to support an excessive force claim. In opposing summary judgment, Plaintiffs first argue the fifteen-minute rule was illegal and arbitrary. Alternatively, Plaintiffs argue Perry and Rollins had a contractual right to be at school. Finally, Plaintiffs argue no probable cause existed to arrest Perry and Rollins for being in the gymnasium in February, 2005.[3]

### 1. The Fifteen-Minute Rule

The court will first address whether HHS had the authority to enact the fifteen-minute rule. Plaintiffs argue Perry and Rollins had a right to be at HHS because the boys were not suspended and the regulations define trespassing as being on school property while under suspension from school. Plaintiffs further argue the fifteen-minute rule required board approval that was never received.

Section 393.410 of the Nevada Revised Statutes makes it unlawful for any person "purposely and maliciously to commit any trespass upon the grounds attached to a public schoolhouse, or any fixtures placed thereon, or any enclosure or sidewalk about the same." Nev. Rev. Stat. § 393.410. WCSD Regulation 5144.1 defines trespass as follows: "[t]o be upon the property of another without permission of the owner and to stay upon same after warning. To be on school property or at a school function while under suspension from school." WCSD Admin. Reg. 5144.1.

The court finds HHS had the authority to enact the fifteen-minute rule. The regulations defines trespass in two ways. First, trespass can occur when a person is on the property of another without permission of the owner and to stay upon that property after warning. WCSD Admin. Reg. 5144.1. Second, a trespass can occur when a person is on school property or at a school function while under suspension from school. *Id*.

---

[3] Plaintiffs do not argue that any other event amounted to an unlawful seizure pursuant to the Fourth Amendment. Furthermore, Plaintiffs do not raise any argument regarding the allegations of unlawful force.

6

Section 391.210 of the Nevada Revised Statutes provides, "[t]he board of trustees of a school district may direct the administrators, principals, teachers and other licensed personnel employed by them to exercise such powers and authority in the schools as the board of trustees has under this title of NRS." Nev. Rev. Stat. § 391.210. WCSD Regulation 5144 explicitly gives the principal "the overall responsibility for the discipline and welfare of the student." WCSD Admin. Reg. 5144. The regulations further provide, "[e]ach principal shall develop or revise rules applicable to conditions in that particular school and in accordance with the administrative regulations." *Id*.

In accordance with this responsibility, HHS adopted the fifteen-minute rule to address safety concerns. *See* (Exhibits (## 61-75), Dep. of Tom Kallay, Ex. 9 at 37:20-39:1.) Thus, the fifteen-minute rule addresses the first definition of trespass and defines under what circumstances a student can be on the property of HHS. In other words, the fifteen-minute rule provides HHS would only consent to giving students fifteen minutes to get to their after-school activities or to vacate the campus. *See id*. at 39:1-6. Thus, the court finds HHS and Principal Kallay had the authority to enact the fifteen-minute rule.

Plaintiffs next argue Perry and Rollins had a contractual right to be at school. Plaintiffs rely on *A.E.B. v. State*, 756 N.E.2d 536, 540 (Ind. Ct. App. 2001), to support this position. In that case, a Juvenile appealed a finding of criminal trespass to the Indiana Court of Appeals. *Id*. The Juvenile argued that the Indiana Constitution coupled with Indiana's compulsory attendance law provided her with a contractual interest in the school property. *Id*. For purposes of the decision, the Indiana Court of appeal assumed, without deciding, that a contractual interest existed. *Id*. Nevertheless, the court found the juvenile violated whatever contract may have existed by interfering with educational activities at the school. *Id*. The court stated, "'[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.'" *Id*. at 540-41 (quoting *Grody v. State*, 278 N.E.2d 280, 284 (Ind.

1972)).

Plaintiffs have provided no Nevada authority indicating students have a contractual right to be at school. However, even if a contractual right to be at HHS exists, such a right would only exist to the extent students are present on school property for educational purposes. As stated by the *A.E.B.* court, the State has the power to preserve the property under its control for the use to which it is lawfully dedicated. *Id*. In this case, HHS lawfully enacted the fifteen-minute rule. Thus, any contractual interest in being present on school property extinguished fifteen-minutes after school ended.

**2. Fourth Amendment Violations**

Defendants argue summary judgment is appropriate because Underhill had probable cause to arrest Perry and Rollins for trespassing. Plaintiffs oppose summary judgment arguing their Fourth Amendment rights were violated when Perry and Rollins were arrested for being in the gymnasium in February, 2005.

In this case, the court finds the undisputed facts show probable cause existed to arrest Perry and Rollins. Probable cause to arrest exists when "'the facts and circumstances within the knowledge of the arresting officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (quoting *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir. 1980)).

It is undisputed that Perry and Rollins were at HHS in violation of the fifteen-minute rule. (Exhibits (## 61-75), Dep. of Edward Shepard, Ex. 6 at 99:3-20.) It is further undisputed that both Underhill and Shepard told the students to leave the gymnasium. *Id*. at 99:21-22; (Exhibits (## 61-75), Dep. of Cornelius Perry, Ex. 5 at 60:10-16, 61:2-5.) Perry and Rollins refused to leave the gym and were unable or unwilling to give Underhill their address. *Id*. at 61:24-62:3. Under these circumstances, Underhill had probable cause to arrest Perry and Rollins for trespassing.

However, even if Underhill did not have probable cause and/or used excessive force, Plaintiffs' § 1983 claim is no longer viable. It is undisputed Underhill is the officer that arrested Perry and Rollins. It is further undisputed that Underhill is the officer that allegedly hit Rollins. Thus, Underhill, in his individual capacity, is the defendant who would be liable for the alleged Fourth Amendment violation. Subsequent to the filing of the present motion, the parties have stipulated (## 80, 81) to the dismissal of Underhill in his individual capacity while keeping Underhill as a defendant in his official capacity. In light of this stipulation, Perry and Rollins's Fourth Amendment claim is no longer viable. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (distinguishing personal capacity and official capacity actions).

However, to the extent the actions of Underhill were based on an official custom or policy, a cause of action may still exist. An official-capacity suit represents another way of pleading an action against the entity of which the officer is an agent. *Id*. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Id*. (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

### 3. Custom or Policy

Defendants next argue WCSD cannot be held liable because no constitutional violations occurred. Defendants further argue no custom or policy actually inflicted injury on Plaintiffs. Specifically, Defendants claim any injury inflicted on Perry and Rollins was due to Perry and Rollins's own conduct in breaking known rules. Plaintiffs argue that the fifteen-minute rule is an official policy of WCSD. Plaintiffs further argue WCSD's discriminatory practices were the moving force behind the constitutional injuries of plaintiffs.

A local government may be sued under § 1983 when an injury is inflicted as a result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. . . ." *Monell v. Dep't of Soc. Serv.*, 436

9

U.S. 658, 694 (1978).  Similarly, "[a] supervisor may be held liable under § 1983 if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (citations omitted).  No liability exists under § 1983 where no injury or constitutional violation occurred.  *Id.*

As previously addressed by the court, HHS had the authority to adopt the fifteen-minute rule.  Thus, no constitutional violation occurred when Underhill detained Perry and Rollins for trespassing and refusing to leave the gymnasium.  Because no injury or constitutional violation occurred as a result of the fifteen-minute rule, there can be no liability under § 1983 based on an official custom or policy.  *See id*.

As further evidence of a custom or policy, Plaintiffs cite to the deposition of Underhill.  During his deposition, Underhill indicated that he was told, and agreed, that the school police had to regain control of the school.  (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Gary Underhill, Ex. 3 at 78:11-79:15.)  The court finds this statement insufficient as evidence of a custom or policy.  The fact Underhill was told that school police had to regain control of the school does not suggest control would be regained at the expense of constitutional rights.  To put this statement in context, Underhill indicated the school had problems in terms of drugs, gang activity, fights and that it was not a positive learning environment.  *Id*. at 79:1-23.  Thus, Underhill took the personal view that he would enforce the rules strictly and make arrests rather than citations.  *Id*. at 76:8-13.  In short, nothing in Underhill's deposition testimony indicates a custom or policy of making unlawful arrests or using excessive force.

Plaintiffs next request the court to take judicial notice of actions pending before the court involving allegations Underhill illegally arrested other African-American students.  Plaintiffs' request for judicial notice will be denied on the basis of relevance.  The fact Plaintiffs' counsel has filed similar actions against Underhill containing allegations of unlawful arrests does not indicate

WCSD has an official policy or custom regarding such a practice.  There is no evidence Underhill was responsible for creating the official policy or custom of WCSD.  Furthermore, there is no evidence indicating Underhill treated non-African-American students differently.

Finally, Plaintiffs rely on the number of arrests and citations made by Underhill while at HHS.  Underhill made ninety-one arrests and gave sixty-two citations during the 2004-2005 school year. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), WCSD's Answers and Objections to First Set of Interrogs., Ex. 12.)  Plaintiffs have not, however, provided any evidence as to the race of the students involved or whether a disproportionate number of minority students were involved.

In short, Defendants met their initial burden of showing Plaintiffs have no evidence of a policy or custom.  Plaintiffs failed to rebut this showing as they have presented no evidence of such a policy or custom.  Thus, summary judgment will be granted.

**B.  Title VI**

Plaintiffs' second cause of action alleges a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Defendants seek summary judgment arguing there is no evidence of intentional race discrimination.  Alternatively, Defendants argue there is no evidence linking federal funding to the alleged discriminatory conduct.  Plaintiffs, on the other hand, argue they have presented evidence of intentional discrimination.

Title VI provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. 2000d.  This provision creates a private right of action for both injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  To state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination, and (2) the entity involved is receiving federal financial assistance.  *Fobbs v. Holy Cross Heath Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA*

*Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

Discrimination must be intentional in order to be actionable under Title VI. *Sandoval*, 532 U.S. at 280. In addition, a plaintiff must prove that he is an intended beneficiary of the federally-funded program at issue. *The Epileptic Found. v. City and County of Maui*, 300 F.Supp.2d 1003, 1011 (D. Haw. 2004) (citing *Wrenn v. Kansas*, 561 F.Supp. 1216, 1212 (D. Kan. 1983)). In order for a recipient of federal funding to be liable under Title VI, an official who has authority to address the alleged discrimination and to institute corrective measures must have actual knowledge of the discrimination and fail to adequately respond. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (requiring actual notice in cases brought pursuant to Title IX); *Rubio v. Turner Unified Sch. Dist. No. 202*, 475 F.Supp.2d 1092, 1098 (D. Kan. 2007). The response must amount to deliberate indifference to discrimination. *Gebser*, 524 U.S. at 290.

Looking at the evidence in the light most favorable to Plaintiffs, the court finds summary judgment is appropriate as there are no genuine issues of material fact. Plaintiffs have presented evidence Underhill called Rollins and Perry niggers while arresting the students. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Decl. of Terry Rollins, Ex. 4 ¶ 8.) Furthermore, Plaintiffs have presented evidence indicating that other students were also in the gymnasium and were not told to leave. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Decl. of Terry Rollins, Ex. 4 ¶ 4.) Thus, it is possible that a reasonable trier of fact could conclude that Underhill discriminated against Perry and Rollins when detaining the students and issuing citations. *See The Epileptic Found.*, 300 F.Supp.2d at 1013.

Nevertheless, there is no evidence that WCSD had actual notice of the discrimination and failed to respond. On February 22, 2005, Williams filed a Citizen Complaint Form stating school police officers were racially discriminating against African-American students. (Exhibits (## 61-75), Citizen Complaint Form, Ex. 7.) However, Plaintiffs have provided no evidence indicating WCSD failed to appropriately respond to this complaint. Moreover, there is no evidence Perry and

Rollins were discriminated against on account of their race at any time after this complaint was filed. Thus, there is no evidence WCSD intentionally discriminated against any of the plaintiffs.

In their opposition, Plaintiffs point to several events that purportedly demonstrate intentional racial discrimination. The court finds this evidence insufficient to create a genuine issue of material fact. Plaintiffs first argue seventy-five percent of the student body at HHS consists of minorities. Although Plaintiffs are correct that HHS is largely composed of minority students, (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Paul Dugan, Ex. 2 at 80:9-15), such statistics do not suggest intentional discrimination.

Plaintiffs next rely on the statement made by Underhill regarding taking back control of the school. *See* (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 99), Dep. of Gary Underhill, Ex. 17 at 75:21-79:13.) The court finds this statement does not show intentional discrimination. Nothing in Underhill's statement indicates school police were treating students differently on account of their race. Rather, Underhill's statement was a response to problems that were occurring at HHS.

Plaintiffs also argue several instances of discrimination occurred and were sanctioned by the administration in the 2003-2004 school year. Patrick McGuire ("McGuire"), a teacher, testified that a vice-principal by the name of Redmond singled out Hispanic and African-American students for suspensions. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Patrick McGuire, Ex. 13 at 15:3-12, 22:3-6, 85:3-14.) This testimony fails to create a genuine issue of material fact. McGuire's testimony does not identify any individual other than Redmond that discriminated against minority students. Furthermore, there is no evidence concerning whether Redmond is still employed at HHS. Finally, there is no evidence Redmond was involved with any decision regarding Perry and Rollins or that WCSD was aware of the alleged discrimination.

Plaintiffs next rely on the testimony of Feemster. Feemster indicated she had seen certain individuals treat students of color unfairly. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Debra Feemster, Ex. 14 at 51:11-18.) This testimony fails to establish a genuine issue of

material fact because Feemster explicitly opined that the discrimination was not deliberate. *Id.* at 51:21-23.

Plaintiffs also rely on the double-hearsay statement of Feemster who was told by a teacher's aide that a teacher allegedly said, "they need to get rid of all black kids." *Id.* at 57:12-16. This double-hearsay statement is inadmissible and cannot be considered in a motion for summary judgment. *See* Fed. R. Evid. 801, 802; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.") Even if this statement were admissible, it fails to show WCSD intentionally discriminated against Perry and Rollins. There is no indication that the teacher who allegedly made the statement at issue played any role in the events of this case.

Finally, Plaintiffs argue WCSD had a dropout prevention policy that was not applied to African-American students. Plaintiffs have provided evidence indicating that "graduation specialists" contact students that have failed one or more classes and have had one or more absences. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Eric Beye, Ex. 5 at 21:13-25.) Furthermore, there is evidence indicating neither Perry nor Rollins were contacted by a graduation specialist. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Aff. of Zena Williams, Ex. ¶ 10.)

Once again, the court finds this evidence insufficient to suggest intentional discrimination. The fact that neither Perry nor Rollins were contacted by a graduation specialist is not, by itself, evidence of discrimination. Plaintiffs have provided no evidence as to whether other, non-African-American, students were contacted by the graduation specialist. It is certainly possible that the graduation specialist failed to contact students of all races. Without evidence indicating African-American students were denied contact with the graduation specialist while other non-African-American students had such contact, the court cannot say that the failure to contact Perry and Rollins is evidence of intentional discrimination.

Thus, the court finds that Defendants met their initial burden of demonstrating no evidence

14

supports Plaintiffs' Title VI claim.  Plaintiffs failed to rebut the motion by setting forth evidence that demonstrates a genuine issue of material fact.  As such, summary judgment will be granted on Plaintiffs' cause of action pursuant to Title VI.

### C. Negligent Supervision and Training

Plaintiffs' seventh claim for relief alleges negligent supervision and training.  Defendants seek summary judgment arguing there is no evidence of antecedent events that would have given WCSD pause in hiring any of the defendants.  Plaintiffs oppose summary judgment arguing that evidence shows the hiring of Underhill was negligent.

"'The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position.'" *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (quoting *Burnett v. C.B.A. Sec. Serv.*, 820 P.2d 750, 752 (Nev. 1991)).  "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Id*. (citing *Kelley v. Baker Protective Services, Inc.*, 401S.E.2d 585, 586 (Ga. 1991)).  Employers also have a duty to use reasonable care in training, supervision, and retention of his or her employees to make sure that employees are fit for their positions.  *Id*. (citing 27 Am. Jur. 2d *Employment Relationship* §§ 475-76 (1996)).

As evidence of negligent hiring, Plaintiffs first rely on the deposition of Underhill.   It is undisputed Underhill testified he had previously applied to the Sparks Police Department.  Underhill was told he was not hired because he did not pass his "department psych."  However, Underhill later found out he did pass and was not hired due to a personal conflict.

As an initial matter, Plaintiffs have provided no evidence Underhill actually failed any psychological exam.  Underhill believes he passed the exam.  Nevertheless, even if Underhill failed the exam, there is no evidence that the failing of the exam is in any way related to the allegations in this case.  In order for an employer to be liable for negligent hiring, there must be evidence that the

employer's negligence caused the alleged injury. *See Hall*, 930 P.2d at 98; *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1226-27 (Nev. 1996). Here, there is no evidence indicating what the psychological exam tests are for or why Underhill allegedly failed the exam. More importantly, Plaintiffs have presented no evidence Underhill was involved with unlawful arrests or excessive force prior to being hired by WCSD. Finally, Plaintiffs have presented no evidence WCSD failed to conduct a reasonable background check.

Plaintiffs next rely on the deposition of Mike Mieras ("Mieras") to argue there was no training budget for the 2004-2005 school year. Although there was no money specifically designated for training, Mieras explicitly stated that money from the general fund is used to send some officers to training. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), Dep. of Mike Mieras, Ex. 16 at 18:20-25.)

Plaintiffs next rely on a May 12, 2005, evaluation of Underhill. The evaluation indicates Underhill "needs to transition from a traditional law enforcement agency to a specialized (school district police) agency." (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), May 12, 2005, Employee Performance Evaluation Report, Ex. 18.) Although this unauthenticated document indicates that Underhill needed to make a "transition," it does not demonstrate WCSD was negligent in failing to train Underhill. If anything, the evaluation demonstrates WCSD was working with Underhill to improve his job performance.

Plaintiffs also argue the number of arrests and citations issued by Underhill show negligent training and hiring. Underhill made ninety-one arrests and gave sixty-two citations during the 2004-2005 school year. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 78), WCSD's Answers and Objections to First set of Interrogs., Ex. 12.) This factual statement is not evidence of negligent training or supervision. Plaintiffs have provided no evidence regarding the circumstances of those arrests and citations. Thus, there is no evidence to indicate any wrongdoing on the part of Underhill or WCSD.

Finally, Plaintiffs argue superintendent Paul Dugan ("Dugan") and Mieras were aware of numerous complaints against Underhill and failed to act until the end of the school year.  Plaintiffs have presented evidence that Dugan was familiar with several complaints against Underhill during the 2004-2005 school year.  (Pls.' Opp'n (# 78), Dep. of Paul Dugan, Ex. 2 at 78:4-7.)  Dugan testified he had discussions with Mieras and Grein in response to this knowledge.  *Id*. at 78:8-10.  Plaintiffs have provided no evidence indicating WCSD failed to investigate the complaints or provide training and supervision to Underhill.  Thus, Plaintiffs have failed to rebut Defendants' properly-supported motion and summary judgment will be granted.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (# 60) is hereby GRANTED.

The Clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 25th day of March, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE